IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES MORRISON, | CV 24-34-BLG-DWM |
| Plaintiff, | |
| vs. | ORDER |
| UNITED STATES, ET AL., | |
| Defendants. | |

Plaintiff James Morrison has filed an Amended Complaint alleging various claims against the United States, among other defendants. (Doc. 5.) The United States has filed a motion to dismiss. (Doc. 16.) The motion is granted.

## I.    Background

Very briefly, Morrison's claims relate to medical treatment he did or did not receive in November, 2021 and associated events. Morrison sought treatment at the Indian Health Services. (Doc 5 at 2.) He was then transferred to Billings Clinic, who then treated him improperly. (Doc. 5 at 3.) He was then retaliated against by various tribal personal for threatening legal action. (Doc. 5 at 3.) He asserts claims under *Bivens v. United States*, and 42 U.S.C. § 1395dd, the Emergency Medical Treatment and Labor Act. He also asserts supplemental jurisdiction state law claims of negligence and medical malpractice. (Doc. 5 at 5.)

1

## II.   Analysis

The United States has moved to dismiss the Amended Complaint, as to it[1],

under Fed. R. Civ. P. 12(b)(1), asserting that this Court has no subject matter

jurisdiction over Morrison's claims. (Doc. 17 at 3.) The United States makes three

arguments. First, *Bivens* claims cannot be pursued against the United States for

reasons of sovereign immunity. (Doc. 17 at 5 – 6.) Second, Morrison has failed to

exhaust his administrative remedies, as required by the Federal Tort Claims Act.

(Doc. 17 at 6 – 7.) And finally, the United States claims that Morrison's tort claims

are barred by the statute of limitations. (Doc. 17 at 7 – 9.)

In response, Morrison asserts that the United States is attempting to

circumvent the alleged import of Judge Watters' previous screening order in this

matter, and "take a second and third bite of the apple with a different judge." (Doc.

18 at 3.) In this argument, Morrison contends that Judge Watters' statement, in a

companion case, that the Federal Torts Claim Act was the proper venue for

Morrison's tort claims against the United States had somehow resolved the issue of

subject matter jurisdiction. (Doc. 18 at 2 (referring to Order, Doc. 7, *Morrison v.*

---

[1] This motion addresses "only federal defendants, which include federal agencies
and deemed federal entities, like authorized 638-contract programs," which is
interpreted here to mean the Indian Health Service. (Doc. 17 at 2.) The motion
does not include Defendants Billings Clinic, tribal law enforcement officers, or
Defendant Grinsell. (Doc. 11 at 2.)

*Billings Clinic, et al.*, CV 23-109-BLG-DWM.)) Morrison further asserts, relying on Fed. R. Civ. P. 8(c) that Defendants' failure to assert the defense of jurisdiction in their responsive pleading waived the issue. (Doc. 18 at 1.)

Morrison then contends that the Indian Health Service is liable under 42 U.S.C. § 1395dd, the Emergency Medical Treatment and Labor Act, because that act waives sovereign immunity. (Doc. 18 at 4.)

Third, Morrison asserts that Billings Clinic, Inc. is subject to default for failing to answer the Amended Complaint. (Doc. 18 at 4.)

Fourth, Morrison reiterates the grounds for his First Amendment retaliation claims against Northern Cheyenne Health Services provider Kala McKinney and "malicious prosecution and arrest" against criminal investigator John Grinsell. (Doc. 18 at 5.)

Finally, Morrison contends that his claims are not barred by the statute of limitations. He asserts that he originally filed this claim on September 21, 2023. (Doc. 18 at 6 – 7.)

## A. Subject matter jurisdiction

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to justiciable "cases" and "controversies." U.S. Const., Art. III, § 2. Fed. R. Civ. P. 12(h)(3) requires that "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject

matter, the court shall dismiss the action." *See Kontrick v. Ryan,* 540 U.S. 443, 455 (2004). Thus, Morrison's contention that the Court cannot consider the U.S.'s motion is easily swept aside. (Doc. 18 at 2.) The Court must consider whether it has subject matter jurisdiction to hear Morrison's case, as federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This Court lacks subject matter jurisdiction over a suit when: (1) the cause of action does not "arise under" a federal law or the United States Constitution, (2) the case is not ripe for adjudication, or (3) the cause of action is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

The United States contends there is no subject matter jurisdiction in this Court, and, as a separate contention, that the United States has not waived its sovereign immunity on Morrison's claims. (Doc. 17 at 4.) Morrison's first response to this argument is to cite Fed. R. Civ. P. 8(c), which requires that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including" several enumerated defenses. However, the terms of Fed. R. Civ. P. 12(b) require that the United States proceed first with its motion to dismiss on jurisdictional grounds, to be followed, if required, by its Answer at a later time. The United States has not waived any of its defenses by filing this motion.

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of proof jurisdiction exists. *Sopak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

### 1. Bivens

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 582 U.S. 548, 553 (2003) (internal quotation marks and citation omitted). *Bivens* concerned an improper search and arrest under the Fourth Amendment of a plaintiff in his home without a warrant. Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice—in *Davis v. Passman*, 442 U.S. 228 (1979), for gender discrimination by a United States Congressman under the Fifth Amendment, and in *Carlson v. Green*, 446 U.S. 14 (1980), for failure to provide adequate medical care by federal prison officials under the Eighth Amendment. *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) ("These three cases – *Bivens, Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

Recent Supreme Court jurisprudence "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.*, at 135. Indeed, the

Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 502 (2022).

The first question, in analyzing the viability of Morrison's claim as a *Bivens* action, is what is the constitutional right at issue? The allegations in Morrison's Amended Complaint against any defendant that could be construed as a federal defendant relate to his medical treatment, and Indian Health Service employee Kala McKinney's retaliation against him for threatening to sue. (Doc. 5 at 3.) On their face, Morrison's claims related to his medical care are not viable *Bivens* claims. *Carlson v. Green*, 446 U.S. 14 (1980), is one of the few identified *Bivens* claims for failure to provide adequate medical care by federal prison officials under the Eighth Amendment. However, that case arose under the Eighth Amendment's cruel and unusual punishment clause, relating to the medical care of a federal prisoner. Morrison's Complaint does not show that he was a federal prisoner at the time his claims arose, and thus, *Carlson* is not an available analog. Medical malpractice, without more, is not a constitutional violation.

(This analysis sets aside, for the moment, who the defendant on this claim might be. The United States or the Indian Health Service cannot be a defendant on a *Bivens* claim. A *Bivens* action cannot be asserted against the United States generally or against a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 486

(1994); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482

F.3d 1157, 1173 (9th Cir. 2007).) But even if Morrison could name an individual

federal actor as a defendant, an unadorned medical malpractice will not support a

*Bivens* claim.)

That leaves Morrison's First Amendment retaliation claim against Northern

Cheyenne Unit Provider Kala McKinney and a Jane Doe defendant for threatening

tort action as a basis for his Bivens action. The gist of his allegation is that

Morrison's threat to sue over medical negligence caused McKinney to call law

enforcement and get him detained.  However, in 2022, the U.S. Supreme Court

held that "there is no *Bivens* action for First Amendment retaliation. There are

many reasons to think that Congress, not the courts, is better suited to authorize

such a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 498 (2022). Morrison has

not alleged a viable *Bivens* claim.

### 2. Federal Tort Claims Act

Thus, any claim Morrison may have related to the actions of federal

defendants must be brought against the United States pursuant to the Federal Tort

Claims Act. 28 U.S.C. §§ 1346(b), 2671–80. *See, e.g.*, *id.* §§ 2401(b), 2402

(additional provisions of the U.S. Code that apply in FTCA cases). The FTCA

provides a tort claims procedure with regard to suits arising from acts or omissions

of government employees, stating that "upon certification by the Attorney General

that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose ... the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The remedy provided under § 1346(b) of the FTCA "shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim." 42 U.S.C. § 233(a).

The FTCA requires, however, that a party exhaust his administrative remedies before bringing suit against the government. The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government ..., unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The administrative claim must be in writing, specify the amount of damages sought and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A plaintiff may thereafter challenge the agency's denial of the claim in federal district court by filing an action within six months of the date of the mailing of the notice of final denial by the agency. 28 U.S.C. § 2401(b). If the appropriate federal entity does not make a written final determination within six months of the date of the plaintiff's filing of the

administrative claim, the claimant may then bring a FTCA action in a federal district court. 28 U.S.C. § 2675(a).

The United States asserts that Morrison has not made this administrative claim. (Doc. 17 at 7.) Morrison did not respond to this argument in his brief. However, to his Amended Complaint, Morrison attached a September 26, 2023, letter from a nurse at the Northern Cheyenne clinic, referring to a letter she had received from the Montana Board of Medical Examiners. (Doc. 5-1 at 1.) This letter does not include any information about what Morrison submitted to the Montana Board, nor does it respond substantively to anything; it merely provides a case number. The implication is that Morrison did not himself submit a claim directly to the federal agency. Morrison's response brief does not mention this letter or respond to the United States' averment that he has not properly made his administrative claim.

The FTCA requires "complete exhaustion of administrative remedies before invocation of the judicial process." *McNeil v. United States*, 508 U.S. 106, 112 (1993). The Supreme Court has described the FTCA's exhaustion requirement as a "clear statutory command." *McNeil*, at 113. In the Ninth Circuit, "[t]he requirement of an administrative claim is jurisdictional." *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (citing *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir.1995)). "Because the requirement is jurisdictional, it 'must be strictly

adhered to. This is particularly so since the FTCA waives sovereign immunity.
Any such waiver must be strictly construed in favor of the United States.'"
*Valadez-Lopez v. Chertoff*, 656 F.3d 851, 855 (9th Cir. 2011) (internal citations
and quotation omitted.) Failure to exhaust the administrative process makes
dismissal with prejudice proper. *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d
1250, 1258 (9th Cir. 2008) (citing *McNeil,* 508 U.S., at 113.)) The administrative
exhaustion requirement cannot be waived, and the failure to file a valid
administrative claim against the appropriate federal agency leaves the district court
without subject-matter jurisdiction to hear that party's claim. *See Cadwalder v.
United States,* 45 F.3d 297, 300 (9th Cir. 1995); *Jerves v. United States,* 966 F.2d
517, 519 (9th Cir. 1992).

Subsequent courts have distinguished the *McNeil* opinion on various
grounds, perhaps attempting to avoid what may be harsh results. But *McNeil*
supports the proposition that exhaustion of administrative remedies serves more
than one purpose.

> The most natural reading of the statute indicates that Congress
> intended to require complete exhaustion of Executive remedies before
> invocation of the judicial process. Every premature filing of an action
> under the FTCA imposes some burden on the judicial system and on
> the Department of Justice which must assume the defense of such
> actions. Although the burden may be slight in an individual case, the
> statute governs the processing of a vast multitude of claims. The
> interest in orderly administration of this body of litigation is best
> served by adherence to the straightforward statutory command.

*McNeil v. United States*, 508 U.S. 106, 112 (1993).

While pro se filings must be liberally construed, to excuse a clear procedural

mandate on that ground would undermine the entire scheme. There is no

justification to allow Morrison to avoid the statutory requirement.

> "While we have insisted that the pleadings prepared by prisoners who do not
> have access to counsel be liberally construed and have held that some
> procedural rules must give way because of the unique circumstance of
> incarceration, we have never suggested that procedural rules in ordinary civil
> litigation should be interpreted so as to excuse mistakes by those who
> proceed without counsel.

*McNeil v. United States*, 508 U.S. at 113 (internal citations omitted).

As a final note, the FTCA "exempts from [its] waiver certain categories of

claims," *Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 218 (2008), including a

broad exemption for claims "arising out of assault, battery, false imprisonment,

false arrest, malicious prosecution, abuse of process, libel, slander,

misrepresentation, deceit, or interference with contract rights." 28 U.S.C. §

2680(h); §§ 2680(a)-(n); *see also United States v. Wong*, 575 U.S. 402, 422 (2015).

It is not clear that Morrison's claims against Defendant Kara McKinney, which he

variously characterizes as a malicious prosecution claim, could even be brought via

that mechanism.

Morrison appears not to have exhausted his administrative remedies. His

claims against the defendant United States entities will be dismissed, without

prejudice.

### 3. Emergency Medical Treatment and Labor Act ("EMTALA")

Morrison has alleged claims under the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd. Morrison's allegation against a federal defendant is that the Indian Health Service transferred him to Billings Clinic without stabilizing him. (Doc. 5-2 at 5.) He alleges that the emergency room personnel knew that he would need surgery, and they transferred him without ensuring he was stabilized. Morrison asserts that the Indian Health Service is liable under 42 U.S.C. § 1395dd, because that act waives sovereign immunity. (Doc. 18 at 4.) Morrison is wrong as a matter of law. Thus, to the extent he asserts an EMTALA claim against the Indian Health Service, the claim must be dismissed. (The United States' brief is somewhat confusing on this point, since they make an argument regarding EMTALA's statute of limitations. That issue need not be reached, because the United States defendants are not liable on an EMTALA claim.)

EMTALA provides a cause of action to individuals who seek emergency treatment at a hospital, to ensure the hospital provides "for an appropriate medical screening examination within the capability of the hospital's emergency department ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a). *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1167 (9th Cir. 2002). One cannot, however, sue the United States under this Act, because the United States has not waived its sovereign immunity.

A waiver of immunity must be explicit. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1992); *Department of Army v. Blue Fox, Inc.,* 525 U.S. 255 (1999). The Act provides, in pertinent part, as follows:

> [a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A). Although there are other enforcement mechanisms available under the Act, this is the only part that speaks to the private right to sue. *See* 42 U.S.C. § 1395dd(d). A plain reading of the text shows that the statute does not mention the United States Government or any hospital owned or maintained by the United States. EMTALA thus lacks an "unequivocally expressed" waiver of sovereign immunity.

The Ninth Circuit Court of Appeals has not addressed this issue, but other courts have consistently held that the Act does not waive the United States' sovereign immunity. *See, e.g., Williams v. United States,* 242 F.3d 169 (4th Cir.2001), *Edgerton v. George,* No. 1:10CV237, 2011 WL 815693 (W.D.N.C. Feb. 4, 2011), *report and recommendation adopted,* No. 1:10CV237, 2011 WL 795537 (W.D.N.C. Feb. 25, 2011); *Baker Cnty. Med. Servs., Inc. v. Holder,* No. 312CV01232J20JRK, 2013 WL 12097628 (M.D. Fla. July 31, 2013), *aff'd sub*

13

*nom. Baker Cnty. Med. Servs., Inc. v. U.S. Atty. Gen.*, 763 F.3d 1274 (11th Cir. 2014); *Cruz-Mendez v. United States*, 799 F. Supp. 2d 154 (D.P.R. 2011); *Majeed v. Atlanta Veteran Affs. Med. Ctr.*, No. 1:18-CV-01037-ELR, 2020 WL 11192845 (N.D. Ga. Feb. 19, 2020); *Hoffman v. United States*, 593 F. Supp. 2d 873 (E.D. Va. 2009); *Cheromiah v. United States*, 55 F. Supp. 2d 1295 (D.N.M. 1999); *Sibley v. United States*, No. 4:07-CV-184 CDL, 2010 WL 234794 (M.D. Ga. Jan. 13, 2010).

The United States has not waived its sovereign immunity to allow an action against the Indian Health Service under EMTALA. Morrison's claim must be dismissed.

### 4. Statute of Limitations

The lack of a *Bivens* or Emergency Medical Treatment and Labor Act claim and the failure to administratively exhaust mean Morrison's Complaint must be dismissed as to the individual federal defendants and the United States. Thus, the issue of the proper statute of limitations or any tolling thereof is not reached.

### III.  Potential Default

Morrison contends that Billings Clinic has failed to timely answer his Complaint. (Doc. 18 at 4 – 5.) Puzzlingly, he asserts that the United States "has answered on behalf of Billings Clinic," but that is incorrect. The United States specifically stated that its motion was on behalf of only federal entities; Billings Clinic is not a federal agency. Thus, it does appear that Billings Clinic may have

failed to respond to the Complaint served upon it. (Doc. 15.) Morrison makes this point but has not yet moved for entry of default.

The United States also avers that Grinsell was not a federal actor at the time of the events Morrison complains of. (Doc. 17 at 3; 17-1 (showing he retired in May, 2020.) Thus, neither a *Bivens* action, if one could be alleged, nor an FTCA claim can lie against him. Morrison identifies Grinsell as a Northern Cheyenne Investigative Services officer. (Doc. 5 at 3.) He also does not appear to have answered the Complaint that was served on him. (Doc. 15-2.) Morrison has not moved for entry of default against Grinsell. Thus, this Order does not discuss or decide any matters related to either Billings Clinic or Defendant Grinsell.

### IV.   Conclusion

Accordingly, IT IS ORDERED that:

1.      Defendant U.S.'s motion to dismiss is GRANTED. (Doc. 16.) Morrison's *Bivens* and Emergency Medical Treatment and Labor Act claims against federal defendants are dismissed with prejudice.

2.      Morrison's potential tort claim against any individual federal defendant under the Federal Tort Claims Act is dismissed without prejudice.

3.      If Morrison intends to pursue entry of default against any defendant for failure to appear, he must proceed pursuant to Fed. R. Civ. P. 55.

3.      At all times, Morrison must promptly advise the Court of any change

of address. Failure to do so may result in dismissal.

DATED this 17 day of October, 2024.

_____

Donald W. Molloy, District Judge
United States District Court